UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
VELMA HARRIS, pro se,

                       Plaintiff,                      **MEMORANDUM AND ORDER**

                   -against-                         03-CV-1593
THE CITY OF NEW YORK, N.Y.C. HEALTH
AND HOSPITAL CORP. and E BERSAMIN,
Associate Director Queens Hospital,

                       Defendants.
----------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

      Pro se plaintiff Velma Harris, a psychiatric social health technician formerly employed by defendant, the New York City Health and Hospital Corporation ("HHC"), brings this action against HHC, the City of New York, and Evelyn Bersamin pursuant to Title VII, 42 U.S.C §2000e *et seq.* ("Title VII") alleging that she was discriminated against based on her race/ethnicity. Plaintiff is an African-American woman who alleges she was denied a work tour change in 1998 while allegedly similarly situated non African-Americans were granted work tour change requests. Presently before the court, is a motion for summary judgment by defendants HHC, the City of New York, and Evelyn Bersamin (collectively the "Defendants"). For the reasons set forth below, Defendants' motion is granted.

**Background**

      Plaintiff was employed by HHC at Queens Hospital Center from February 10, 1992 through May 24, 1998. In early 1992, defendant Evelyn Bersamin, an associate director at the Queens Center Hospital, interviewed plaintiff for the position of Licensed Practical Nurse at Queens Center Hospital, and plaintiff was hired in the Psychiatric Department on January 31,

1992.[1]  (Def. 56.1 Statement¶1; Walters Decl. Ex. B.)[2]  The day plaintiff was hired, she signed a memo acknowledging that the Psychiatric Department was a "closed area which means staff has to cover each other."  (Ex. C.)  Although plaintiff requested a Tour I shift when she applied, she was assigned to Tour II on her first day.[3]  (Ex. A 35:18 – 22.)

In her complaint, plaintiff alleges discrimination based upon Defendants' repeated denials of her requests for tour changes.  As early as 1994, plaintiff renewed her request to defendant Bersamin for a change in shift from Tour III to Tour I.  (Ex. A 51:4 – 5.)[4]  These requests for a transfer to Tour I were communicated orally until February 5, 1998 when plaintiff sent a written request to defendant Bersamin.  In this letter, plaintiff asked for a change to Tour I because of difficulties concerning childcare.  (Ex. L; Ex. A 51:4 – 5, 17 – 20.)  Defendants argue that plaintiff's requests were denied due to a staff shortage on Tour III and not for discriminatory reasons.

Plaintiff also alleges several instances of discrimination based upon comments by defendant Bersamin.  At various points in her employment, defendant Bersamin "teased her" because she was a "hard worker," a term that plaintiff believes is a "play on the fact that [she is] African-American."  (Ex. A 64:5 – 6.)  In addition, plaintiff alleges that defendant Bersamin, referring to African-Americans, stated that as "Jesse Jackson's people [ ] they do whatever he says" while plaintiff was close enough to hear her.  (Compl. ¶ 8.) Because of this alleged animus

---

[1] Plaintiff was demoted to psychiatric social health technician in 1994 due to Plaintiff's violation of hospital policies concerning charting.  However, this demotion was a legitimate employment action and Plaintiff does not assert otherwise in her complaint.  (Ex. F.)

[2] Unless otherwise stated, the exhibits referred to herein appear as exhibits to the Declaration of Alecia Walters dated April 29, 2004.

[3] The Department of Psychiatry employees were assigned to one of three shifts known as "Tours."  Tour I lasted from 11PM to 7AM, Tour II lasted from 7AM to 3PM and Tour III from 3PM to 11PM.  (Ex. A 34:14 – 24.)

[4] On May 19, 1994, Plaintiff volunteered to change to Tour III to accommodate another worker.  (Ex. A 45:15 – 20.)

against African-Americans, plaintiff contends that defendant Bersamin refused to transfer her while honoring the requests of similarly situated non-African American employees. (Compl. ¶ 7.) On Sept. 15, 1998, plaintiff filed a complaint with the City of New York Commission on Human Rights ("CHR") alleging she was discriminated against based on her race.[5] (Ex. M.) On Sept. 17, 2002, the CHR, after an investigation by the City of New York's Law Enforcement Bureau, determined that the transfer plaintiff had requested was not "operationally feasible" at the time of the request. The CHR determined that this was a valid reason to deny plaintiff's request. (Ex N.) When plaintiff did not respond to the HRC's letter, that it would reconsider if provided with evidence of discrimination, the complaint with the HRC was administratively closed on October 18, 2002.

Plaintiff received her right to sue letter from the EEOC on January 3, 2003. (Ex. P.) On March 28, 2003 the plaintiff, acting pro se, filed a Title VII complaint alleging employment discrimination against Defendants.

**Discussion**

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986) (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-159, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970)). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement

---

[5] Plaintiff was injured on the job in May of 1998 and left HHC's employment.

is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-248 (emphasis in original).

Although Defendant's summary judgment motion is unopposed and the facts stated in the Defendants' Local Rule 56.1 statements are deemed admitted for the purpose of this motion, the moving party must still meet its burden of demonstrating that no material issue of fact exists. *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 1998) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)). Additionally, each of the facts in Defendants' 56.1 statement must also be followed by citation to evidence which would be admissible, under Fed. R. Civ. P. 56(e). *See also*, E.D.N.Y. Local Civ. R. 56.1 (d). "Thus, it is clear that even when a non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 1998). "Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statements of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir. 2004). If the evidence in support of the summary judgment motion does not meet this burden, summary judgment must be denied "*even if no opposing evidentiary matter is presented.*" *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 1998) (emphasis in original).

I. Claim against the City of New York

Plaintiff asserts a claim against defendant the City of New York, independent of her claim against HHC. As HHC is a public benefit corporation, it is a separate and distinct entity

from the City of New York. *Clarke v. City of New York* No. 98 CV 3715, 2001 WL 876926 at *10 (E.D.N.Y. Aug. 1, 2001) (*citing Brennan v. City of New York*, 451 N.E.2d 478, 479 (N.Y. 1983) (holding HHC, as an independent public benefit corporation, is not an agency of the City of New York). Plaintiff does not dispute that she is employed by HHC. Plaintiff's complaint asserts allegations against HHC (and its employee) and not the City of New York. Plaintiff does not provide any evidence of that the City of New York influences personnel decisions of HHC or has any control over their policies. Therefore, plaintiff cannot properly assert a Title VII claim against the City of New York because the City of New York is not a proper party to this action. The motion for summary judgment for failure to state a claim against the City of New York is granted.

II. Claim against individual defendant Bersamin

Plaintiff asserts a Title VII claim against individual defendant Evelyn Bersamin. Individuals are not subject to liability under Title VII. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir. 1995) (holding that individuals with supervisory control may not be held personally liable under Title VII). Therefore, the motion for summary judgement concerning the Title VII claims against defendant Bersamin is granted.

III. Claim against HHC

Under Title VII, "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. §2000e-2.

Discrimination claims under Title VII are evaluated under the burden-shifting framework established in *McDonnell Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802,

93 S. Ct. 1817, 36 L.Ed.2d 668 (1973); *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003); *Jetter v. Knothe Corp.*, 324 F.3d 73, 74 – 75 (2nd Cir. 2003). To establish a prima facie case of discrimination, the plaintiff has the burden of showing that he or she is (1) a member of a protected class, (2) was qualified for the position in question, (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *McDonnell Douglas,* 411 U.S. at 802. If the plaintiff meets this initial burden, the burden then shifts to the defendant to provide a legitimate nondiscriminatory reason for its actions. *Id.* If the defendant provides evidence of a legitimate nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to show that the reason proffered was a pretext for the type of discrimination prohibited by Title VII. *Id.* at 804.

It is undisputed that plaintiff, an African-American woman, is a member of a protected class. It is also undisputed that plaintiff was qualified for her position at Queens Center Hospital. She therefore satisfies both the first and second requirements for a Title VII prima facie case. However, because plaintiff has failed to establish an adverse employment action and a casual link between an adverse employment action and a discriminatory motive, the claims against HHC must be dismissed.

A. Adverse Employment Action

Under Title VII, an adverse employment action occurs when a protected employee endures a "materially adverse change" in the terms and conditions of employment. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). A materially adverse change of working conditions "might be indicated by termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."

*Galabya,* 202 F.3d at 640. However, a "mere inconvenience" or alteration of job responsibilities does not amount to an adverse employment action. *Weeks v. New York State,* 273 F.3d 76, 85 (2d Cir. 2001) (*citing Galabya*, 202 F.3d at 640).

Plaintiff alleges that HHC's repeated denials of her transfer requests constitute an adverse employment action. Plaintiff claims that by denying her a transfer, HHC is not meeting her needs as a single parent creating a "serious hardship" for plaintiff. (Compl. ¶ 5.) "Such subjective, personal disappointments do not meet the objective indicia of an adverse employment action." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004); *see also*, *Bunis v. Runyon,* No. 94-Civ-2063, 1997 WL 639241 at *3 (S.D.N.Y. Oct. 16, 1997) ("While Plaintiff may be unhappy about the denial of her shift change request, this Court concludes that Plaintiff's subjective feelings about the denial are not enough to transform the denial into an adverse employment action within the meaning of Title VII"). While plaintiff may view the Tour III shift to which she was assigned negatively, she has not provided any evidence to show how her status as an employee was adversely affected. The denial of the transfer of her shift did not affect plaintiff's salary nor her ability to be promoted. It did not involve a significant reduction in material responsibilities nor a reduction in any other condition of plaintiff's employment. What we are left with is plaintiff's *subjective* belief that her denial of a shift change affects her negatively. Subjective beliefs alone are not a sufficient basis for a Title VII claim. *See Williams*, 368 F.3d at 128 (*quoting Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532-33 n. 6 (10th Cir. 1998) ("[T]he fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action")); *see also Bickerstaff v. Vassar College,* 196 F.3d 435, 456 (2d Cir. 1999) ("[feeling and perception] of being discriminated against [are] not evidence of discrimination")(alteration in original)

(citation omitted). Because plaintiff has failed to show that the denials of her request for a transfer to another shift led to a materially adverse change to the terms and conditions of her employment, plaintiff has failed to establish an adverse employment action.

B. Causation

Even assuming *arguendo* that plaintiff successfully established that she suffered an adverse employment action, plaintiff has failed to show that Defendants took such action under circumstances giving rise to an inference of discrimination.[6] HHC asserts that plaintiff's transfer request was denied based on a staffing shortage in the department to which plaintiff was assigned. After plaintiff made a written request for a transfer on February 5, 1998, defendant Bersamin replied by letter denying plaintiff's request "at this time" due to a shortage of staff. (Ex. K.) Plaintiff, herself, acknowledges that on Tour III there was "definitely a shortage" of staff. (Ex. A 53:1 – 20.) Further, one month later, on March 5, 1998, defendant Bersamin again inquired with the Tour I supervisor, Chan Jamoona, to determine if any Tour I employees would change to Tour III to accommodate plaintiff's request. Jamoona explained that several Tour III employees were on sick leave or "comp." and the department could not lose another employee without being short staffed. As none of the employees on Tour I was willing to change shifts, plaintiff's request could not be granted. This discussion was memorialized in a memo to plaintiff on March 9, 1998. (Ex. L.) Thus Defendants' have set forth a legitimate non-discriminatory reason for denying her tour change requests.

Plaintiff appears to allege a disparate treatment claim; she states that non African-American employees had similar shift change requests accommodated while similarly situated

---

[6]The court also assumes, without deciding, that the incidents which plaintiff bases her complaint are not barred by the 300-day statute of limitations for filing an EEOC claim.

African-American employees had their requests denied.  If this were true, it would constitute an actionable discrimination claim since "a showing of disparate treatment -- that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' -- is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." *Mandell v. County of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003) (internal quotations in original)(citation omitted).  But the plaintiff in a Title VII case bears the burden of providing evidence that shows that the employees they are comparing themselves to are similarly situated in every material way and that these employees, in fact, have been given employment opportunities denied to the plaintiff and members of the plaintiff's class. *Id.* (*citing Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).  The bare, conclusory statements drawn from plaintiff's complaint are unsupported by any evidence in the record.  Without such evidentiary support, this disparate treatment claim is insufficient to establish an adverse employment action.

C. Hostile Work Environment

Although plaintiff does not specifically allege the existence of a hostile work environment, her complaint will be liberally construed to raise this claim.  *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir. 1995) (*quoting Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)) (holding a pro se litigant's papers are to be read "liberally, and [interpreted] to raise the strongest arguments that they suggest").

A hostile work environment claim will succeed when the conduct at issue is so "severe or pervasive" as to create an "objectively hostile or abusive work environment where the victim subjectively perceives the environment to be abusive." *Richardson v. New York State Dept. Of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999) (*citing Harris v. Forklift Sys.,* 510 U.S. 17, 21 –

22, 114 S. Ct 367, 126 L. Ed. 2d 295 (1993)). The Supreme Court in *Harris* listed several factors to be considered in a hostile work environment claim including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work conduct. *Harris,* 510 U.S. at 23. While this list of factors is not exhaustive, it provides guidance in assessing the degree of harassment necessary to trigger an actionable hostile work environment claim. *Id.*

Plaintiff's complaint alleges that, on one occasion, she overheard defendant Bersamin make a derogatory comment about African-Americans. She also alleges that defendant Bersamin "teased" her about being a hard worker. If these comments were considered "severe or pervasive" enough to make plaintiff's work environment *objectively* hostile or abusive they could constitute the basis for a Title VII hostile work environment claim. But a "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not affect the conditions of employment to sufficiently significant degree to violate Title VII." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 60, 106 S. Ct 2399, 91 L. Ed. 2d 49 (1986) (*quoting Rogers v. E.E.O.C.*, 454 F.2d 234 , 238 (5th Cir. 1971)). Whether or not racial slurs constitute a hostile work environment depends on the frequency, quantity, and severity of the slurs. *Harris,* 510 U.S. at 23. For a hostile work environment claim to succeed, there must be more than a few isolated incidents of racist slurs. *Schwapp v. Town of Avon*, 118 F.3d 106, 111-112 (2d Cir. 1997). For plaintiff to survive a motion for summary judgment, she must produce evidence that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Harris*, 510 U.S. at 21 (internal citations omitted).

Plaintiff refers to only one isolated incident of an *objectively* derogatory slur. Plaintiff asserts that defendant Bersamin had a conversation with non African-American employees where she allegedly stated that African-Americans are "Jesse Jackson's people and they do whatever he says." (Compl. ¶ 8.) Plaintiff is not even certain that this statement was made by defendant Bersamin and admits it could have been made by someone else who looked like Bersamin. (Ex. A 73:12 – 17.) Given that the facts are construed in the light most favorable to plaintiff for the purposes of this motion, and even assuming that the statement was made by defendant Bersamin, this single example constitutes a "mere racial epithet." It did not create a workplace full of "intimidation, ridicule, and insult, that . . . alter[ed] the conditions of the victim's employment and create[d] an abusive work environment." *Harris,* 510 U.S. at 21. While it may have been unpleasant for plaintiff to overhear, this incident alone is not enough to establish a hostile work environment claim under Title VII.

Plaintiff also alleges that when defendant Bersamin referred to her as a "hard worker" it was really "a play on the fact [plaintiff] was African-American." While plaintiff's complaint alleges she was "often teased," in her deposition plaintiff stated, "I need to eliminate that word 'often tease' but [Bersamin] actually more or less stated it." (Ex. A 62:5 – 12.) A reasonable person does not view being called a "hard worker" as discriminatory or as negative. Normally being called a "hard worker" is considered a compliment. Therefore, even though plaintiff viewed defendant Bersamin's remarks as *subjectively* discriminatory, a similarly situated reasonable person would not view those remarks as discriminatory.

Given that a hostile work environment claim is evaluated based on the totality of the circumstances, plaintiff's claim must fail. *See Harris*, 510 U.S. at 23 (holding that courts must assess the totality of circumstances when evaluating a hostile work environment claim). Plaintiff

has alleged only one *objectively* derogatory comment. In toto, plaintiff has referred to only two incidents in over six years of employment. The incidents she referred to were not physically threatening nor did they effect her working conditions. "Incidents that are few in number and that occur over a short period of time may fail to demonstrate a hostile work environment." *Whidbee v. Garzarelli*, 223 F.3d 62, 69 (2d Cir. 2000). Therefore, plaintiff's hostile work environment fails.

**Conclusion**

Because plaintiff has failed to establish an adverse employment action made under circumstances giving rise to an inference of discrimination, plaintiff has failed to establish a prima facie case of discrimination under Title VII. Plaintiff's has also failed to establish severe or pervasive conduct sufficient to establish a hostile work environment claim. Accordingly, Defendants' motion for summary judgment is granted in its entirety.

SO ORDERED.

DATED:     Brooklyn, New York
           July 17, 2006

                                               /s/
                                        DORA L. IRIZARRY
                                     United States District Judge